817 F.2d 105
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LEASING SERVICE CORPORATION, Plaintiff,
v.
DOUBLE C COAL COMPANY, Defendant,
SIMPSON ESTATE, Third Party Plaintiff and Appellee,
v.
John L. A. BOND, Third Party Defendant and Appellant.
 No. 86-5298.
 United States Court of Appeals, Sixth Circuit.
 April 30, 1987.
 
 Before RYAN and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.
 BOGGS, Circuit Judge.
 
 
 1
 Double C Coal Company ("Double C") leased equipment for use in its Kentucky coalfields from Leasing Service Corporation ("Leasco"). The lease obligations were guaranteed by, among others, John W. Simpson. Third party defendant John L. A. Bond ("Bond") bought the corporate stock of Double C and allegedly guaranteed the lease obligations of one of the stockholders in Double C, John W. Simpson, predecessor in interest to the Simpson Estate, the appellee. Both Simpson and Bond agree that the buyer of the corporate stock was Bond's wholly-owned corporation, Bond Coal Sales Company, Inc. ("Bondco").
 
 
 2
 The issue here is whether the guarantee was given by Bondco, or by Bond personally. The district court permitted the introduction of parol evidence for the interpretation of the sale agreement, and a jury found for Simpson on that issue. We reverse the district court, based upon the plain meaning of the contract.
 
 
 3
 * On October 24, 1974, Double C executed an equipment lease with Leasco for the use of certain coal extraction equipment. Later, when the market for coal began to drop, Double C fell behind on its lease payments and defaulted in October, 1975.
 
 
 4
 Through its principals and stockholders, Chester Powell, John W. Simpson, and Clyde Van Hoose, Double C began to negotiate an agreement with Bond to sell all of the corporation's assets and obligations. Simpson met with Bond before the sale. A part of the disputed parol evidence arises out of their first discussion, when Simpson allegedly told Bond that he wanted a personal guarantee and Bond allegedly agreed. Warney Joseph, a minority shareholder in Double C, testified to this and also testified that before the transaction, Simpson told Joseph that he wanted Bond's personal guarantee of the equipment lease. To the contrary, Bond relies on his testimony and that of Robert Metry, Bondco's secretary, that Bond refused to provide indemnification.
 
 
 5
 The testimony at trial revealed that the principals in Double C met with Bond and Metry on April 29, 1975 in a hotel room in London, Kentucky to close the agreement. Present for Double C were Van Hoose, Powell, and Simpson. The deal was structured as a sale to Bond of 100% of the stock. Last-minute handwritten changes were made to a typewritten form agreement to reflect the identity of the purchaser, as "John L. A. Bond, as Attorney for undisclosed principals, with offices at 25 Roslyn Road, Mineola, New York." Further last-minute changes were made to Section 5 of the agreement relating to the indemnity clause. The typewritten word "Purchaser" was crossed out as the guarantor, and the words "Bond Coal Sales Co., Inc. (Bond)" were added in handwriting. At three other places in that section, on the same page, "Bond" was written in, in place of the printed word "Purchaser," to name the guarantor. The changes in Metry's handwriting were initialed by Simpson, Powell, and Van Hoose, and the corporate initials of Bondco and BVW Coal Company were added.
 
 
 6
 The trial of the third party indemnity complaint concerned only the interpretation of Section 5 of the agreement. The parties did not, and do not now, dispute that the content of the section is as set out in the body of the opinion. The dispute concerns the circumstances of the execution of the agreement, which the trial court thought contributed to the ambiguity of Section 5, the authenticity of the contracts introduced into evidence, and the interpretation of the language of Section 5 itself.
 
 
 7
 The closing was hurried and Metry testified that many copies of the contract were signed by Bond and Simpson, but not all were signed by Metry in his capacity of a corporate officer of Bondco. Bond produced a copy signed by Metry. At the trial, Metry testified that he did not know why the contract introduced by appellee was not signed by him. All copies are identical except for Metry's added signature; and neither party disputed the existence of a final agreement at trial.
 
 
 8
 Leasco sued Double C on March 15, 1976. Simpson filed a third party claim for indemnity against Bond on the theory that Bond was personally liable. Attached to the third party complaint was a copy of the contract. The main action was settled with respect to many of the parties. The district judge submitted Bond's liability to the jury, which found Bond breached his indemnity agreement. The damages were established by an agreed judgment in the amount of $225,000. The judge denied Bond's motion for a judgment notwithstanding the verdict.
 
 
 9
 Simpson died on August 20, 1984, and his estate was substituted for him in this action. On appeal, Bond claims that there was no evidence to support the verdict, several violations of the parol evidence rule, and procedural errors relating to the questioning of witnesses and improper jury instructions.
 
 II
 
 10
 The court must first examine the language of the agreement to determine whether its terms are ambiguous and may thus be varied or contradicted by the parol evidence that appellees introduced at trial. 0. P. Link Handle Company v. C. M. Wright, 429 S.W. 2d 842 (Ky. 1968). This inquiry is preliminary to the application of the "familiar rule that where a written instrument is clear and complete in itself it must be interpreted according to its terms and legal import without the influence of or variation or contradiction by extrinsic parol evidence" in Kentucky law. Johnson v. Johnson, 297 Ky. 268, 178 S.W. 2d 985, 985 (1944). This rule is one of positive or substantive law founded upon the substantive rights of the parties. Ibid. Because this is a case arising under diversity jurisdiction, the state law is applied. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).
 
 
 11
 Simpson argues that the following language taken from Section 5 of the agreement is ambiguous:
 
 
 12
 Bond Coal Sales Company, Inc. (Bond) agrees as follows:
 
 
 13
 A. Bond assumes and agrees to pay in accordance with its terms the equipment lease for the equipment assigned hereunder and will hold harmless and indemnify the sellers against subject liability.
 
 
 14
 At the district court level and on appeal, Simpson attacked the use of parentheses as inherently ambiguous. At oral argument, the appellees relied heavily upon the opinion of the district court, who considered the entire agreement, including the indemnity provision, and found that the use of the parentheses created ambiguity.
 
 
 15
 This court has carefully considered the language in the parentheses and the legal phrases used in the indemnity provision in the light of rules of common English usage, and finds no such ambiguity. Considering that both parties have consistently maintained throughout this lawsuit that the language of the agreement is not in dispute, this court must conclude that the agreement means exactly what it says, that Bondco was the indemnitor, and not Bond, for the following reasons. The use of parentheses to enclose a shorthand term in apposition to a longer term is absolutely standard in both legal and non-legal writing. It is used in this opinion. It does not create ambiguity. When the term "Bond" standing alone is used later on the same page, it unambiguously is simply the use of the shorthand established with the use of the parenthetical phrase. There is no use of the term "Bond" within the contract that would contradict its use to refer to Bondco or in any other way create an ambiguity. The case for ambiguity here is far weaker than in Central Jersey Dodge Truck Center, Inc. v. Sightseer Corp., 608 F.2d 1106 (6th Cir. 1979), where parol evidence was admitted to supplement provisions that were incomplete, and the vague phrase "unless otherwise obligated by statute or contract." Id. at 1110-11. Here there is no such vagueness in the phrasing of the contract.
 
 
 16
 Because the court finds that the parol evidence rule was misapplied by the district court, it is not necessary to consider appellant's other claims of error.
 
 
 17
 Bond is entitled to the granting of his motion for judgment notwithstanding the verdict. The decision of the district court is VACATED and the cause REMANDED for dismissal.